Ladies and gentlemen, we'll proceed immediately to our final case. We'll be glad to hear from counsel in Kiran M. Dewan, CPA, P.A. v. Arun Walia. Mr. Schleifman, we'll be glad to hear from you whenever you're ready, sir. Good morning, judges. Good morning. May it please the court, my name is Paul Schleifman and I'm here on behalf of the appellant. Before you get into your argument, counsel, I have a threshold question that's really been nagging at me and I don't really know the answer precisely. I'm hoping you do and we can move on quickly. But I'm curious about why we've spent all this time, the district court, the parties, counsel, concerned about the Maryland Uniform Arbitration Act instead of the Federal Arbitration Act. Now, I'm not sure at all whether the difference between the two statutes and the case law under the two statutes drive the outcome here in whole or in part, but I don't think there's any question that the Federal Arbitration Act would apply to the review of the award in this case. And I take it the reason it hasn't come up is because nobody's brought it up. I mean, the documents in this case make choice of law, contain choice of law provisions to be sure. Selecting Maryland law, I understand that. But there are lots of cases that point out that choice of law provisions and agreements generally are designed to choose between and among state law and not between state and federal law. But in any event, I'd always thought of the Federal Arbitration Act as sort of a remedial provision in most respects that simply applies in federal court when the underlying agreement out of which the dispute arises is in interstate commerce. And I don't think there's any doubt here that the underlying transactions and agreements are in interstate commerce. So all of that is simply by way of saying, why do we care about them? Do we care about the Maryland Arbitration Act here? And if so, why should we care? I think the reason it came up this way, Your Honor, is that when a complaint was filed to vacate, it was filed solely under the Maryland Uniform Arbitration Act. When the appellee moved to confirm, it was also filed solely under the Maryland Arbitration Act. So noted. But you don't suggest to me that that's binding on the district court. I don't suggest that it's binding on the district court. And I think the Maxim versus Salas case clearly says when interstate commerce is involved, the Federal Act preempts. So I think that's how we got to the position that we are. Let me answer the second question you posed, that whether or not it impacts this case. Yeah, does it make a difference? It may make a difference is the answer. And it only makes a difference with regard to the Downey versus Sharp case that came out of the Maryland Court of Appeals last year. Last year, until last year in Maryland, especially in the Court of Special Appeals, the courts always looked at including manifest disregard, completely irrational standards as part of the statute. So last year, the Court of Appeals said, guess what, fellas? It's not part of the statute. We're going to reserve whether or not there are extra grounds, but it's not part of the statute. especially after Mattel and everything else and Wachovia versus Bland when the Fourth Circuit said, we still find that reckless disregard fails to draw its essence from the contract. Those standards are still available. So my point is that is the only area where Maryland Court, you know, the Maryland Courts of Appeals and the Federal Court have differed. But I would submit to Your Honor that you probably don't need to address that question in this case because it could be dismissed on jurisdictional grounds. But were the court to reach that issue, we would suggest that Maryland would go ahead and say that those grounds are in addition to the statutory grounds. I'm not sure I understand what you mean by it can be dismissed on jurisdictional grounds. Well, let me get to that then. Okay. I mean, there is diversity of citizenship here. I guess when I'm using jurisdiction and when our briefs we use jurisdiction, I'm talking about really the act that the arbitrator didn't have the authority to hear the given matter. And I think a lot of courts, when they talk about jurisdiction of the arbitrator, they look back at the arbitration agreements to see if, in fact, there was jurisdiction there. And so when I'm talking about jurisdiction, I'm really talking about if we're talking about the Maryland Act or the Arbitration Act, you know, whether the arbitrator exceeded her powers. And Maryland made clear that where the arbitrator doesn't have any authority to hear that precise argument to deal with that issue, they've exceeded their powers, and that's a reason to vacate. And the same is in the federal statute. So what we have here, there is two different areas where I think the court could go ahead and vacate just on what I call jurisdictional, but let's just say it. I'll try to stop using that term. Good. Let's not use jurisdictional. Okay. Exceeding their powers. And they've done it in two ways, one dealing with the INA claims and the other dealing with all of the counterclaims. I'll address the INA claims first because it's a subset of everything. But our argument simply is that the Department of Congress gave the Department of Labor sole authority to go ahead and hear claims that the INA was violated. In fact, Apley went to the Department of Labor with their claims. But they then, six months later, also filed the claims in an arbitration. And appellants said immediately, don't have authority to hear this. It's outside the scope, and it only goes to the Department of Labor. The arbitrator says, my authority is vast and wide and expansive. I can hear everything. In effect, the arbitrator, do you agree, in effect, the arbitrator made the legal determination that there were implied causes of action under the Immigration and Naturalization Act. Would you agree with that characterization? I would. I'm not sure if it's implied or direct, but yes. Well, nobody contends that there are expressed causes of action under the INA. I don't think that claim. It's implied. And almost certainly, if that question were presented to a federal district court judge, that judge almost certainly, I think, given the present state of implied causes of action, that judge would almost certainly say no, there's no implied causes of action. The Supreme Court has put the kibosh on implied causes of action, pretty much. So I think the question, at least in part, is can an arbitrator make a legal determination as a part of an arbitration proceeding that would be beyond the kin of a federal district judge to make? And I think the answer to that is at least sometimes, right? Well, I think in this circumstance, it's no, because an arbitrator still only can consider the matters that the parties say they can consider, whether it's Supreme Court, Court of Appeals, District Courts, Maryland Court of Appeals, have always said arbitration is a creature of contract. You have to look at what the parties intended to go ahead and have the arbitrator submit. Here, and if you look at both the federal cases and that, the courts have said if there is no private cause of action, if there's no private right of action, there's nothing to arbitrate. And that's really what's happened here, and that's really the gravamen of our argument, is simply the arbitrator had no authority to hear the INA-related claims. Yet she assumed jurisdiction of those claims. Now... There's that sneaky word again. I know, but, well, then she assumed authority to hear those claims. And we're saying that's one of the reasons why it should be vacated, whether it's under the FAA or the MUAA. She exceeded her powers because she didn't have the authority to hear those claims. And that's... Happily, you say, oh, the Fourth Circuit ruling and the Venture Commitment versus REI systems doesn't apply because it didn't deal with arbitrations. Well, I think that's frankly a silly argument. I mean, if there's no private action, there's no private remedy, you don't have the right to say, well, arbitration's not a private remedy. I don't understand that. What do you say about the release? Frankly, that's the most puzzling aspect of this case to my mind. All right, well, let's... The arbitrator says the release is enforceable, knowingly and voluntarily executed by the appellee, didn't have counsel but had the opportunity to consult with counsel. There was clear consideration. It's a broad release. It covers everything except, I guess, what she's saying, INA claims, which you say don't even exist. Right. And I think to talk about the release, again, not using the J word but using the exceeding the authority, but in our reply brief, we point out that once she found that that release was valid and enforceable, the 2006, there were two agreements that contained arbitration. The 2006 was off the table. Those claims, any rights under there were extinguished by him. That just left him with the 2009 agreement. And what they're really coming and saying here is that when you look at the party's intention, that notwithstanding the fact that in the release all the claims were released, that the arbitration provision gives them the right to arbitrate claims that were released. Well, released with respect to litigation in federal or state court. I mean, that's one way to look at the scope of the release. It just bars litigation. And the arbitrator did not construe litigation as encompassing arbitration. That may be odd, unusual. Perhaps bizarre. But how does that amount to a manifest disregard of the law? I would say that it amounts not only to that. Particularly given the broad discretion that we give to arbitrators to decide a case, not necessarily decide it correctly, but simply decide. I'll address that two ways. First of all, I think you don't even need to reach the manifest disregard. Fails to draw the essence because she exceeded her authority to even consider that claim. You seem to be enveloping all of the claims under the INA, but I think the defendant would argue that there were, in fact, contractual and tort claims that were not encompassed by the statute and that were, in fact, properly before the arbitrator. And let me apologize if I didn't make myself clear. There are two arguments that I'm making with regard to 224B3 or the exceeding authority. One deals with the INA-related claims. Let's put them to the side. The other deals with the release. And my point is once the release, once she found that the release was valid and enforceable, the only document left that gave the arbitrator any authority over the matters was the settlement agreement and release. But that settlement, you still need to look at what the parties intended to permit the arbitrator to hear. And their argument or my argument here today is the arbitration agreement did not go and say, we're giving you a release, you know, but I'm retaining the right to arbitrate those very claims that I released. It's nonsensical. So my point is that once she found that that release was valid and enforceable, she had no authority to consider any of the counterclaims. That arose from conduct prior to November 3, 2009. That's my point on that, and that's why I was saying with regard, this court could vacate purely on exceeding powers, whether it's under the FAA or the MUAA. And that's, you know, that's the point. I made the other arguments in the brief. I see my, I should sum up, so I'll just, I've reserved five minutes. I'll wait until then. Thank you very much. Thank you. We'll be glad to hear from you, Mr. Charlton. Let me get right to the release issue. Several points to make here. One, the arbitration clauses in both the 2006 employment agreement and the 2009 release agreement, both which were drafted by DeJuan, Karen DeJuan, an attorney, apply to any and all disputes. They are very broad, and, in fact, the arbitrator repeatedly referred in her interim and final awards to her, the expansive scope of the arbitration. Something also very important. While the arbitrator did not explain why she was making an award while finding the release valid and enforceable, Judge Johnson, and I'm referring to page JA204, he did provide underpinnings for why she would go ahead. He refers to Fifth Circuit precedent, including Smith v. Amedesis. In our brief, we did cite a part of what he said at that page. But if you look at that, he said basically three things. The release agreement, which was really a severance package, a severance agreement, did not recite the consequences of the release, and principally where that applies here is that it did not recite that he was waiving his wage claim, not just to wages owed but also to the 5% of the net profits that were part of the 2006 agreement and the oral agreement of the parties that while you would be paid 10%. I'm sorry. I'm not following yet, Counsel. As I read the release, it's one of the broadest, most comprehensive releases, frankly, I've ever seen. Well, many releases are broad, but it did not recite the consequences. It did not. Reciting consequences? Right. This is an employment. This is not just any release agreement. This is an employment agreement, and it didn't say you're waiving. And I'm referring to what Judge Johnson said, too. You're waiving your wage claim. It didn't specify the types of claims waived. It didn't say anything about wages. It cites a couple employment discrimination statutes. I thought it said contractual, tort, statutory, state, federal. Doesn't it say all that? It does say that. What's left? Specifically wage claims. Wage claims is a state statutory claim or a federal statutory claim. That's true. It can be. That's true. Can it be? It is. Well, we've got a severance agreement here, and the Fifth Circuit, at least, has put an onus on the employer to put some specifics in there rather than just saying a general lease of all claims past and present from the beginning of time to the present. Known and unknown. We don't really have it. Another thing that's relevant in there, and that Judge Johnson pointed out, is that the amount of money paid, the $7,000, by my rough calculation, was about five cents on the dollar on what was actually owed. Well, but the arbitrator made no mention of that. In fact, she said that the release was enforceable. So that suggests that she had no qualms with the amount of consideration given for the release. No. Well, her wording was that she found it enforceable under Maryland law. It doesn't mean that at the same time she didn't note that hundreds of thousands of dollars were owed in wages under the employment agreements, but that the release paid $7,000, and that's where I get my calculation of basically five cents on the dollar. Well, let me just say, I mean, I agree with Justice Davis. This is a pretty broad release. I thought your argument was, even though the arbitrator didn't suggest this, that the release simply barred litigation in the conventional sense, but did not, at least expressly, bar this very happenstance, that is an arbitration of those claims. Now, that doesn't make any sense, frankly, in terms of a rational person on the other side of a negotiating table, that you would allow that to happen. But I suppose if you strain the language sufficiently enough, you can get to that result, even if I might disagree with it. But given our deferential standard of review, why isn't that enough? Absolutely, Your Honor. I was getting to others. There's several points to be made here, and Your Honor made one to Mr. Schleifman. Exactly. And her holding is that Walia is barred from bringing any state and any tort and contract claims in state court. And I think the clear inference from her decision, again, under Baltimore County v. Baltimore, she didn't have to explain the basis of her finding, but that she was finding that any claims in court were barred, but not arbitration. Doesn't the release say that your client simply promises never to file a lawsuit? That's correct, Your Honor. Well, this is not a lawsuit, right? Absolutely. Absolutely, Your Honor. And then there's a fourth matter, which is that- Is the petition to enforce an arbitral award of lawsuit? No, that is to- Isn't that litigation? That was designed to make the award enforceable so that it could be collected upon to get a court judgment. If you interpret the release to leave available an arbitral forum, how do you get to enforce your arbitral award without litigation in state or federal court? Well, let's go back to how that litigation came about. No, I understand it was a counterclaim, but still, to my knowledge, there are no arbitral awards that are self-executing, that are self-enforcing. You've got to go to court and get a judgment in order to enforce an arbitral award. And that's litigation. Well, the way that litigation came about, Your Honor, is because Dewan and the accounting firm filed in federal court to vacate. And as part of that action, which had been opened by the appellants themselves, not by- So is this a waiver argument? Are you saying, well, Judge, they sued us first, and all we've done is come in without counterclaim seeking enforcement? Confirmation of the award? No. The arbitration award was before the federal court, and because it was, and so we moved to confirm and enforce it. But there was no counterclaim. This was just, we were defending against the petition to vacate the arbitration award. There was no litigation initiated by us. And we wanted the award to be enforceable by the common means of garnishment and attachment. The other matter is, one other argument as to this release, which is a major premise of the appellants is that Dewan was an honest businessman. This premise was explicitly rejected by the arbitrator. She found that- I'm not sure that's their major premise. I said a major premise. I didn't say the only premise. Well, I think that is relevant because none of this happens if he were an honest businessman. If Dewan were an honest businessman, he doesn't grossly underpay his employee. He doesn't put a severance agreement in front of him that pays him essentially five cents on the dollar for what he's owed. And he doesn't put a non-compete in there that is a penalty in that it seeks to deprive Wya of his livelihood as an accountant within a large geographic radius of Baltimore and the D.C. area. And then once the matter goes to litigation, Dewan engages in, according to the arbitrator, bad faith litigation abuses, including the fraudulent income tax returns for the accounting firm, two fraudulent affidavits, a spoliated 2009 employment agreement, and a finding of perjury. I mean, this permeates the arbitrator's awards, both interim and final. And the fact of the matter is when any trier of fact, whether it be an arbitrator, a judge, or a jury, it finds that one employer has essentially economically abused its employee and then engaged in a series of bad faith litigation abuses, that trier of fact is going to slam the employer. And that's exactly what's happened here. And yet she didn't, and this is not a criticism, she did not find any infirmity in the execution of the release by your client. Well, she found it valid and enforceable under Maryland law. That was it, she just said under the law, but she... I mean, that's a key finding here is because if your client gets out from under that release, then the world is your pistachio, right? Right, Your Honor. And as Judge Diaz pointed out, but the inference here is that she found that the claims could be arbitrated, but not litigated. And in fact, in federal court, while he did not litigate his claims, he just had this arbitration award and he sought to have it enrolled as a judgment or confirmed and enforced as a judgment. On the basis for her authority, tell me about the INA. Tell us about the INA. Sure. Two aspects. Is there any legal authority from any court that says a person such as your client has a private cause of action against an employer under the INA? No, but that is not the relevant inquiry. The relevant inquiry is can statutory claims be arbitrated? And Gilmore said positively, yes, they can be. There's no question that statutory claims can be and are every day arbitrated. No question. We agree with you on that. The question is what statutory claim has ever been recognized for a private cause of action under the INA? That's the question. Whether it's in court or in an arbitral forum, first you've got to say, or at least I would think you've got to identify, a claim, express or implied, recognized in law, cognizable, which authorizes one who is allegedly harmed, suffers injury under the INA in connection with the employment provisions they're under, to bring a claim against the former employer or present employer. I'd like to respond in two ways. Okay. No case explicitly holds that a statutory claim as to which there is no private cause of action cannot be arbitrated. I'm sorry to interrupt you, but how can there be a statutory claim? How can you form the words that you just did, a statutory claim for which there's no private cause of action? I don't get that. A statutory claim is a cause of action. Well, no, right. Help me out. No, no. A claim is a cause of action. No, no. A cause of action is the old language. You know, the federal rules now talk about a claim. So how can there be a statutory claim that doesn't involve a cause of action, express or implied? Let me answer this by pointing to the Newcombe precedent. I recognize that Newcombe involved this security statute. It didn't involve the INA per se. But in that case, this court held that there was no private cause of action under the relevant statute, Section 17A of the Act. Right. And then it said in a footnote, as a result of our holding that no private right of action exists under Section 17A, we have no reason to discuss the district court's holding that Newcombe's Section 17A claim had to be submitted to arbitration. What's implicit in here is that if the parties had agreed to submit this claim to arbitration, they could. And what this case and other cases cited in the briefs, including the Dale case, were what counts is the language of the arbitration clause in the party's agreement, whether that encompasses whether there is a whatever you want to call it, a claim cause of action. Here we had an extremely broad, extremely broad arbitration clauses, which were both drafted by DeJuan himself, which provide for arbitration of any and all disputes. So your argument seems now to be that an arbitration agreement can itself give rise to a claim that doesn't otherwise exist in law. Do you follow me? I would phrase it differently. Parties can agree to arbitrate any claim they want, whether there's a private cause of action or not. But can parties create a claim other than a claim for violation of an agreement, a contractual claim? Obviously, parties can't create a statutory claim, right? Right. Parties can't create a constitutional claim. Parties can create a contract claim. And the behavior of parties can give rise to a tort claim. But how do two private individuals create a claim other than in those ways? They can agree to arbitrate any claim they want. But let me get into another way here. There's another very important thing. I believe Judge Diaz touched on this. And Mr. Sleipman referred to these claims. These claims, while the INA overlap with them, these claims were essentially common law breach of employment contract claims. Which are released. Which were released. The arbitrator apparently found, in terms of litigation, not for arbitration. And in terms of her interpreting her expansive authority to arbitrate any and all disputes. But this was a standalone. Forget the INA exists. This entire claim comes out. That is for wages owed, for the 5% of net profits under the 2006 agreement. And that's why the 2006 agreement is relevant, notwithstanding the 2009 release agreement. As well as the 10% of gross profits for work performed by Wally himself. But those are all contemplated under a common law breach of employment contract claim. And the fact that the INA overlaps with part of that does not mean that there's any, really, necessarily any issue. As to there not being a private cause of action. Therefore, there being no claim. In fact, if you look at Judge Johnson, it's in the record at pages 269 to 271. He says, basically, my authority is limited to the parameters of the LCA. The LCA concerns the prevailing wage for an H-1B account. And he also refers explicitly to some of the claims here, the 5% net profits. I think I can point you to the exact page in the record extract. I'm referring to JA-270. There may have been a subsequent agreement by Respondent to add premium pay based on a percentage of his business. It is not relevant to whether Respondent complied with its obligation under the INA. Now, Wally dismissed, eventually, his DOL claim for a couple reasons. One, because he had just had his arbitration award confirmed and enforced by Judge Bennett. Another one was because of what Judge Johnson had said there. Basically, I'm only going to hear about this claim as it pertains to the prevailing wage for an account. I'm not going to hear a large part of your claim doesn't come within my authority, jurisdiction, whatever you use that word. And so, therefore, we don't even really need to get into this, this issue of whether this claim could not be brought because the INA was involved. Yes, it overlapped with the claim, but the claim was a standalone. And another matter I would argue, Your Honor, is that what the appellants are seeking, really, is a modification or reversal of Gilmore, which is not for this Court to decide, because the Gilmore case does not distinguish between statutory claims as to which there is a private cause of action or which there is not. If they want to do that, it should be to them, and the appellant should file in that court. Is she a lawyer, the arbitrator here? I'm not sure, Your Honor, about that. You weren't involved in the arbitration? I was not, correct, Your Honor. My co-counsel was. I came in about a year ago when this case was in federal court. Do you think the Federal Arbitration Act applies here? I was listening to the colloquy between Your Honors and Mr. Schleifman. My understanding, and I really haven't researched the issue, is that, of course, because this is a diversity action, the substantive law is the Maryland state law. But Your Honor had mentioned about this has an impact on interstate commerce. I didn't follow that. Could Your Honor please explain? Your client moved from Canada to the United States to work. What could be? Well, is that interstate? That's international, I think, not interstate. Well, the Constitution talks about commerce among the states and international commerce as well. All right, but the business dealings themselves took place entirely in Maryland. But you're not really arguing to us that these agreements don't affect interstate commerce? Well, I was just asking how Your Honor was viewing it. Right. I don't have any further answer. I haven't really researched it other than my understanding was that state substantive law applied because this is a diversity action. Does the federal court have the option not to apply the Federal Arbitration Act if it otherwise applied? I would think not. But the issue, Your Honor, as Your Honor raised to Mr. Sleifman, is does that make a substantive difference here? I mean, it's still under both laws there is a very limited review of an arbitrator's award. Quite right. Okay. Only other point I want to make is as to the first issue, which is Mr. DeJuan standing as a party here. You look at the form that's GA-267 in which he initiated arbitration. Under claimant, he put both himself and the company, and he said in an including caption, both. And this is quite relevant. I think the main point is he was an intended beneficiary of the release agreement. Paragraph three of the agreement, he refers to he's You know, that part of what you have is, I don't know if it's straightforward, but you just left perhaps the most interesting and intriguing issue here, complex issue deals with this whole business of the private right of action. If the federal statute is not provided, is arbitration a proceeding that is different? And does it matter where you are seeking a vacature of an award from a district court in arbitration? Arbitration is a different animal than a legal proceeding. And parties can submit to arbitration, and they can submit the rights that don't exist anywhere to arbitration. That's the nature of the arbitration proceeding, is that you don't have to go out and find a private cause of action or a statute or something if we seek to say if this dispute arises as to this matter, we're going to settle this in arbitration, and this is what we're going to do. And that's kind of what's here, and I'm not sure the briefs have really gone into it to the depth that I would like to have seen them to go into it on that particular issue, because there's a good split of authority, and I'm not sure this circuit has clearly articulated that law, how to deal with it. Judge Davis brings up an interesting question in terms of the interaction of the Maryland Uniform Arbitration Act and the Federal Arbitration Act and choice of law clause. I actually was pretty settled on the choice of law. I thought if he chose the choice of law, but now he causes me to reflect a little bit more on that. But nonetheless, that issue is still there on the private cause of action of this whole matter, and to what extent does that matter? And that's what I would think that you really would have delved into in this case. I agree, Your Honor. Basically, arbitration is a creature of contract. The parties can agree to arbitrate any dispute they want, and I'm out of time, so I just want to briefly conclude on standing as a party. Mr. Dewan was an intended beneficiary, and in that capacity he accepted or adopted the two agreements with the arbitration clauses. And he also should be stopped from denying he was a party after filing and then only contesting when he didn't get the result he received. Thank you, Your Honor. Thank you very much, Counsel. I'd like to cover a few topics that were raised during that. First, I'd like to address Judge Diaz's questions with regard to the reliance in the paragraph 3 of the employee settlement agreement, the last sentence. Dealing with the last sentence says, employee promises never to file a lawsuit or assist in or commence any action asserting any claims losses. I submit to you, Judge Diaz, that the entire release, we'll come back to that sentence in a second, the entire release says he's waived any and all claims. So with respect to the jurisdiction, sorry, Judge Davis, with respect to the exceeding authority argument, the release took them out. There was nothing left. The arbitrator exceeded her authority by considering those claims. And that is a de novo legal review. It has nothing to do with deference. It has nothing to do with whether or not we should read that last sentence to say, oh, she misstated the law or it failed or it's manifest disregard. Exceeding the authority was done when she went ahead and did the release. I agree that that sentence says what it says, and that would go if you were going to give deference on a review. Our point simply is that once the arbitrator found that the release was valid and enforceable, she had no authority to consider any of those claims, notwithstanding that the last sentence says. Well, but the question is, what does it mean to be enforceable? How far and to what extent is the release enforceable? And I'm telling you, it's not the best argument, but it seems implicit that she concluded, because she went directly to the analysis of the merits of the claim, that enforceable meant only enforceable in any litigation that ensued in state and federal court. Well, then I would respond by going and living in that world of it fails to draw its essence from the agreement. And when you look at this employment and settlement and employee settlement agreement release agreement, it's a total release. You know, that's the essence of the agreement. So for her, for the arbitrator to go ahead and find that all the claims are released. I understand that all the claims are released. But you could go ahead and assert these claims, but not in a federal court. It's just totally inconsistent, and it doesn't draw its essence from what this agreement was intended to do. So that's how I would respond to your argument. Well, it's not my argument. Oh, well, your question. I'm sorry, Your Honor. You know, and there was a discussion of the Newcomb v. Esri case, and the reference to a footnote. I didn't go back and look at the footnote, but I'm sure if the court does, or the judge's law clerks do, you'll see that what the court was saying there was because there is no private right of action, there's nothing to submit to arbitration. We don't even need to go there. There's nothing to submit. In fact, we said that the existence of a private cause of action logically precedes the question of arbitrability. Right. I mean, we have to get there first and then decide the question. And does it de novo, without giving deference on those issues, to what the arbitrator's founding is? That's federal and state courts. To address your question, Judge Winn, you know, I don't know that I necessarily agree with the premise underlying your question, and that is that parties to an arbitration can go ahead and agree to arbitrate claims that aren't even in existence. I think that parties to it, and if the court looks at not the Downey v. Sharp Court of Appeals opinion, but the Sharp v. Downey Court of Special Appeals opinion, the court talks about the need for people to go into arbitration expecting that the laws that they selected will apply. It's not a legal document from that perspective, though, in terms of an arbitration. An arbitration agreement in and of itself may create respective rights there and may point to certain rights in federal law. There may be rights with which there's no private right of action, but the arbitration agreement can confer such a thing. And the question is, does this do that? Because arbitration is not a legal proceeding. So you're not limited in terms of, well, you can only bring a cause of action. What you can bring is that which the arbitration encompasses. I see it said stop. May I answer your question, Judge? Then I think you go back and look at the Supreme Court cases. I forget, you know, Chicago case. No, that's not the right acronym for it, where it says you go back and it is axiomatic that arbitration is a creature of contract and where only the arbitrator only has the right to hear matters that the parties expressly go ahead and place before her and submit to arbitration. So perhaps you're right that the parties could ask the arbitrator to consider matters that are not recognized. But in this case, they didn't do that. Thank you, Judges. Thank you very much, Counsel. We appreciate all the presentations. We'll ask the court to adjourn court, and then we'll come down and recounsel in this case and recess for the day. This honorable court stands adjourned until tomorrow morning at 930. God save the United States and this honorable court.
judges: Andre M. Davis, James A. Wynn Jr., Albert Diaz